USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4-7-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                                :
ALI OKLU,                                                       :    14cv845
                                                                :
          Movant,                                           :    12cr177
                                                                :
      -against-                                               :    MEMORANDUM & ORDER
                                                                :
UNITED STATES OF AMERICA,                                       :
                                                                :
          Respondent.                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Petitioner pro se Ali Oklu moves for habeas relief pursuant to 28 U.S.C. § 2255. Oklu claims that his attorney provided ineffective assistance of counsel. For the following reasons, this Court denies Oklu's petition in part and orders the Government to supplement its briefing.

## BACKGROUND

        On February 24, 2012, Oklu—then a New York City Police Department officer—was charged by an Information with: (1) conspiracy to transport firearms interstate (18 U.S.C. §§ 371, 922(a)(3)), (2) conspiracy to transport defaced firearms interstate (18 U.S.C. §§ 371, 922(k)), and (3) conspiracy to transport stolen merchandise interstate valued at $5,000 or more (18 U.S.C. §§ 371, 2314–15). The gravamen of the Government's allegations was that Oklu conspired with fellow officers to transport purportedly stolen goods—including cigarettes, slot machines, and firearms—across state lines between 2010 and 2011.

        On December 11, 2012, Oklu pled guilty to the first and third counts of the Information before Magistrate Judge Gorenstein. Thereafter, this Court accepted Oklu's plea.

During his allocution, Oklu admitted that he committed the offenses charged in Counts One and Three of the Information. He also acknowledged that he was satisfied with his counsel's representation, understood his right to plead not guilty and proceed to trial before a jury, and that he understood all of the terms and conditions of his plea agreement. Under his plea agreement, Oklu stipulated to a United States Sentencing Guidelines ("Guidelines") offense level of 21 and a sentencing range of 37 to 46 months of imprisonment. The plea agreement also provided that Oklu "agrees to waive any ownership or other rights in the firearms he possessed and surrendered to the Government at the time of his arrest."

On April 18, 2013 this Court sentenced Oklu principally to a 46-month term of imprisonment followed by a three-year term of supervised release, a fine of $7,500, and a $200 special assessment. Consistent with the plea agreement, this Court also imposed a forfeiture on Oklu in the amount of $35,000. During the sentencing proceeding, Oklu offered no substantive objections to any of the factual matters set forth in the February 11, 2013 Presentence Investigation Report. This Court adopted the uncontested findings of fact therein.

After filing a notice of appeal in May 2013, Oklu moved to withdraw it in December 2013. After the Court of Appeals granted that motion, Oklu filed this Petition.

LEGAL STANDARD

Under 28 U.S.C. § 2255(a), federal prisoners may challenge sentences "imposed in violation of the Constitution or laws of the United States." Because the Sixth Amendment protects the right to effective assistance of counsel, ineffective assistance of counsel is a basis for relief under § 2255. See Morales v. United States, 635 F.3d 39, 42–43 (2d Cir. 2011).

To prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must show that: (1) his attorney's representation fell below an objective standard of

reasonableness; and (2) there is a reasonable probability that, but for the deficiency in representation, the result of the proceeding would have been different—i.e., that he was prejudiced by his counsel's deficient performance. Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (citing Strickland v. Washington, 466 U.S. 668, 687–88, 693–94 (1984)).  The prejudice component of the Strickland test focuses on "focuses on the outcome of the proceeding rather than defendant's priorities" and whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Kovacs v. United States, 744 F.3d 44, 49–53 (2d Cir. 2014).  There is a strong presumption that counsel exercises reasonable judgment in all significant decisions. Strickland, 466 U.S. at 690.

Because Oklu is proceeding pro se, this Court reads his Petition and supplemental submissions liberally and interprets them to raise the strongest arguments they suggest. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  However, self-serving, conclusory allegations are insufficient to establish ineffective assistance of counsel. See United States v. Torres, 129 F.3d 710, 715–17 (2d Cir. 1997).

DISCUSSION

Oklu argues that his counsel, Philip Weinstein of the Federal Defenders of New York, provided ineffective assistance by: (1) failing to investigate defenses and review discovery; (2) forcing Oklu to plead guilty rather than proceed to trial; and (3) mishandling the plea agreement.

I.  Failure to Investigate

The duty to investigate "requires counsel to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Greiner v. Wells, 417 F.3d 305, 320 (2d Cir. 2005) (quotations and citation omitted).  "It does not, however,

compel defense counsel to investigate comprehensively every lead or possible defense." Greiner, 417 F.3d at 320.

Oklu offers an email from Weinstein acknowledging that the Federal Defenders did not produce any legal memoranda for Oklu's case. (Pet. at 11.) However, the fact that Weinstein produced no formal legal memos is insufficient to give rise to a claim for ineffective assistance of counsel. See Wojtowicz v. United States, 550 F.2d 786, 792 (2d Cir. 1977) ("In evaluating claims of ineffective assistance of counsel it has long been the rule that time consumed in oral discussion and legal research is not the crucial test.") (quotation marks and citation omitted).

Oklu also claims that Weinstein met with him only four times over 12 months and that Weinstein was unaware of "key evidence" provided by the Government. (Pet. at 10.) Oklu contends that a thorough review of the Government's evidence would have revealed to Weintstein that Oklu did not know that he was involved in transporting stolen cigarettes and firearms. But Oklu's contentions regarding counsel's failure to investigate are belied by Weinstein's Declaration (ECF No. 17 ("Weinstein Decl.")). Weinstein submits timesheets reflecting that he personally spent 224 hours working on Oklu's case, and that paralegals and investigators with the Federal Defenders spent an additional ~100 hours working on the matter. Weinstein explains that he reviewed all discovery material concerning Oklu and discussed it with him "[o]n numerous occasions," including a special meeting with a codefendant and that codefendant's attorney to address the most incriminating evidence. (Weinstein Decl. 1–2.)

Indeed, Weinstein also investigated allegations by Oklu that were ultimately determined to be false. For example, after Oklu represented to Weinstein that one of the Government's most damaging recorded conversations had been tampered with, Weinstein hired

an expert to examine the recording. That expert concluded that the recording had not been tampered with. (Wenstein Decl. 2–3.) Similarly, Oklu insisted that another recorded phone conversation provided in discovery was incomplete, and that the missing portion contained exculpatory information omitted by the Government. In this instance, Weinstein's investigator confirmed that Oklu had been provided with the entire conversation. (Weinstein Decl. 3.) In short, Oklu's Petition fails to overcome the "strong presumption" that counsel exercised reasonable judgment in his investigation of Oklu's case.

II. Counsel's Advice that Oklu Plead Guilty

Where a petitioner challenges a guilty plea on the basis of ineffective assistance of counsel, Strickland's prejudice prong can only be met if the petitioner establishes "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (quotation marks and citation omitted).

Oklu claims that he was forced to plead guilty because Weinstein: (1) refused to conduct any research, (2) refused to discuss the case with Oklu, (3) informed Oklu that the Magistrate Judge would not accept a plea if he maintained his innocence during the plea allocution, (4) used Oklu's sisters to coerce Oklu to plead guilty, and (5) drafted a false statement for Oklu to read during his allocution. Oklu's allegations that Weinstein refused to conduct research or investigate the case are sufficiently refuted by the Weinstein Declaration and exhibits submitted therewith. The remainder of Oklu's arguments are undermined by both the Weinstein Declaration and Oklu's own admissions during his plea allocution.

Weinstein does not dispute that he told Oklu that the evidence against him was overwhelming such that he would likely be convicted at trial, and that this risk was compounded

by the fact that there could be additional testimony against him by codefendants who may have signed cooperation agreements. (Weinstein Decl. at 4.) He also explained—correctly—that Oklu would face a higher sentence if convicted after a trial. It is not ineffective assistance of counsel for an attorney to explain truthfully to a client that he is likely to be convicted. Given the strength of the Government's case, the decision to focus on plea negotiations was a strategic decision. See United States v. Logan, 845 F. Supp. 2d 499, 512–13 (E.D.N.Y. 2012) ("there is nothing to indicate to . . . that [counsel]'s concentration on [pleading guilty] was not merely a strategic decision made in [defendant]'s defense.").

More importantly, the representations in Oklu's Petition directly contradict the representations to Magistrate Judge Gorenstein during the plea allocution. Specifically, Oklu represented that he was satisfied with Weinstein's representation of him, that he was aware of his right to plead not guilty and proceed to trial, that his guilty plea was voluntary and made of his own free will, and that he did, in fact, commit the offenses charged in Counts One and Three of the Information. It is well-established that "[a]llegations a defendant makes in a Section 2255 petition 'cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'" Norville v. United States, No. 10-cr-1046 (VM), --- F.Supp.3d ----, 2015 WL 9450592, at *3 (S.D.N.Y. Aug. 28, 2015) (quoting Hernandez, 242 F.3d at 112–13)). Here, "[Oklu]'s statements during his guilty plea and sentencing confirmed that no one threatened him or forced him to plead guilty." Logan, 845 F. Supp. 2d at 513.[1]

---

[1] Oklu insists that, at a minimum, the Petition merits a hearing because the issues he raises "implicate actions taken by counsel outside the presence of the trial judge and therefore could not ordinarily be resolved by him without such a hearing." Armienti v. United States, 234 F.3d 820, 825 (2d Cir. 2000). However, because Oklu's contentions are belied by his plea allocution, a hearing is unnecessary. See Contino v. United States, 535 F.3d 124, 128 (2d Cir. 2008) (affirming the district court's denial of a habeas hearing where "the detailed indictment, the written (and signed) plea agreement, and the terms of his allocution" belied the arguments underlying the petitioner's ineffective assistance of counsel claims).

### III.   The Plea Agreement

With respect to the plea agreement, Oklu argues that: (1) counsel did not inform his client of the option to plead guilty without entering a written plea agreement, (2) the plea agreement contained a Guidelines calculation error, and (3) counsel unwittingly forced Oklu to forfeit his firearms while failing to explain that provision of the plea agreement to Oklu.

#### A.  Pleading Without a Written Agreement

Oklu argues that counsel failed to inform him that he could have pled guilty without entering a formal plea agreement.  Oklu maintains that this prejudiced him because he would have reserved the right to contest the amount of merchandise that he actually knew was stolen, and would have retained the right to seek direct appellate review of the manner in which his Guidelines range was calculated.

The Weinstein Declaration contradicts Oklu's contentions.  Specifically, Weinstein asserts that they "discussed the relative merits of a guilty plea pursuant to a plea agreement and an open plea."  (Weinstein Decl. 4.)   In support, Weinstein submits an email chain between himself and the AUSA prosecuting Oklu in which the AUSA explained that the plea agreement would keep the loss amounts low and avoid a leadership role enhancement.  Expanding on that, the Government argues here that the plea agreement benefited Oklu because: (1) the Government dropped Count Two; (2) the Government would have proved a higher loss amount absent a plea agreement; and (3) the Government would have sought a leadership enhancement.

"Courts have refused to find ineffective assistance of counsel in cases where defendants have received tangible benefits from the plea agreements negotiated by counsel." Migliorato v. United States, No. 02-cv-1664 (LMM), 2003 WL 22700164, at *1 (S.D.N.Y. Nov.

13, 2003) (quoting <u>Jimenez v. United States</u>, No. 00-cv-7114, 2001 WL 699060, at *5 (S.D.N.Y. June 20, 2001)). For example, in <u>Migliorato</u>, the court recognized the risks of advising a client to plead guilty without a plea agreement where "the government would have retained the right to seek forfeiture[—an outcome the petitioner in that case sought to avoid—], and there [was] no assurance that the guidelines sentencing range would not [have] been higher than that agreed to in the plea agreement." <u>Migliorato</u>, 2003 WL 22700164, at *1 n.1. The same is essentially true here. Thus, "[g]iven the deference to counsel dictated by <u>Strickland</u>, counsel's advice to [Oklu] to accept the Plea Agreement cannot be deemed objectively unreasonable." <u>Migliorato</u>, 2003 WL 22700164, at *1.

### B. Guidelines Calculations

Oklu argues that the Plea Agreement incorrectly calculated his Guidelines range because it did not group Counts One and Three. <u>See</u> Government Ex. D at 3 ("Pursuant to U.S.S.G. § 3D1.2, Count One is not Grouped with Count Three and they are treated as separate groups.").

U.S.S.G. § 3D1.2 establishes that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

> (a) When counts involve the same victim and the same act or transaction.
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.[2]
>
> (c) When one of the counts embodies conduct that is treated as a specific offense

---

[2] Notably, the Guidelines Commentary and Application Notes clarify that "[f]or offenses in which there are no identifiable victims (<u>e.g.</u>, drug or immigration offenses, where society at large is the victim), the 'victim' for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related."

>characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
>(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

§ 3D1.2 lists specific offenses that "are to be grouped under this subsection." Included in that list are the offenses charged in Counts One (U.S.S.G. § 2K2.1) and Three (U.S.S.G. § 2B1.1). In that sense, Oklu makes a prima facie showing that his counsel should have argued to Group Counts One and Three.

The Government fails to rebut Oklu's argument on this point. In its principal brief, the Government misapprehends Oklu's point by framing it as follows: "Oklu claims that the plea agreement incorrectly grouped Counts One and Three, which resulted in a higher Guidelines range." (Opp'n Br. at 21.) But Oklu argues precisely the opposite: that Counts One and Three were not grouped, thereby increasing his stipulated Guidelines range. In its supplemental brief, the Government pivots to the Weinstein Declaration as its support for the argument that "those counts are not grouped pursuant to U.S.S.G. § 3D1.1." But Weinstein admits that he "did not discuss grouping" only because "in [his] opinion, those counts do not group under § 3D1.1." (Weinstein Decl. 5.)

In short, neither Weinstein nor the Government provide any explanation for why Counts One and Three should not have been grouped. Without further briefing on the part of the Government, this Court cannot determine whether counsel was ineffective in failing to discuss the possibility of grouping those counts, and whether that may have prejudiced Oklu. Accordingly, the Government is directed to supplement its briefing to provide a detailed explanation addressing: (1) why Counts One and Three should not have been grouped pursuant

to § 3D1.1, and (2) if Counts One and Three should have been grouped, whether Oklu was prejudiced by his counsel's failure to raise that argument.

### C. Firearms Forfeiture

Lastly, Oklu offers evidence from which a reasonable person could infer that his counsel overlooked the fact that the Plea Agreement prohibited Oklu from selling his legally owned firearms. The Government seized Oklu's firearms as a condition of his bail agreement. (Weinstein Decl. at 5.) "At an early pre-plea stage in the proceedings," Oklu informed Weinstein that he wanted to be able to sell his firearms. (Weinstein Decl. at 5.) However, in the plea agreement, Oklu "agree[d] to waive any ownership or other rights in the firearms he possessed and surrendered to the Government at the time of his arrest." (Plea Agreement at 6.). Despite that clear waiver, Oklu submits an email chain—the day after his plea—in which Weinstein asks Oklu to identify a potential purchaser of Oklu's firearms. (Pet. Ex. 15.) Oklu promptly identified a NYPD officer from the Community Affairs Bureau. When Weinstein reached out to the AUSA, she informed him that the plea agreement forfeited Oklu's rights to those weapons and that "[t]he NYPD has them and will keep them." (Pet. Ex. 15.)

Understandably, Oklu is upset by this series of events. Less than a year before his plea, the Second Circuit established that convicted felons may transfer lawfully–owned firearms and ammunition to a third party for financial benefit. See United States v. Zaleski, 686 F.3d 90 (2d Cir. 2012). The Supreme Court recently agreed that courts "may approve the transfer of guns . . . if . . . that disposition prevents the felon from later exercising control over those

weapons." Henderson v. United States, 135 S. Ct. 1780, 1786 (2015).[3] Based on Oklu's submissions, it appears that counsel failed to explain the forfeiture provision to Oklu.[4]

Nevertheless, the Government argues that even if such actions establish that Oklu's attorney's representation fell below an objective standard of reasonableness in this regard, "Oklu cannot make the requisite showing of prejudice stemming from prior counsel's alleged failure to explain that a term of the plea agreement included waiver of ownership rights in firearms seized from him upon arrest." (ECF No. 12 at 22.) Despite the prejudice to Oklu if he inadvertently forfeited his right to transfer lawfully–owned assets, the Government is correct that such prejudice does not fall within the scope of § 2255, which is limited to claims to vacate, set aside or correct an unlawfully imposed sentence. However, the Government states that "such failure . . . at most provides Oklu with an opportunity to contest the forfeiture of the firearms." (ECF No. 20 at 5.) And the Government provides no rationale (neither in connection with this Petition nor in its 2012 correspondence with Oklu's counsel) as to why such a transfer should have been refused. Accordingly, the Government is directed to inform this Court whether it would entertain such an application pursuant to the Supreme Court's recent decision in Henderson.

## CONCLUSION

For the reasons set forth above, the Government is directed to submit

---

[3] Oklu submits the Court's decision in Henderson in a "Motion to Amend." (ECF No. 22.) This Court construes Oklu's Motion to Amend as a motion for leave to file a notice of supplemental authority, and hereby grants that motion.

[4] The Government argues that the Weinstein Declaration establishes that "throughout the case, Mr. Weinstein advised Oklu that the Government intended to keep the firearms seized from him at arrest." (ECF No. 20 at 4.) But the Weinstein Declaration provides no support for such a broad statement. To the contrary, it establishes that despite Oklu's stated interest in selling his firearms at an early stage of the case, Weinstein "d[oes] not recall any discussion of the seized firearms." (Weinstein Decl. at 5.)

supplemental briefing by April 21, 2016 addressing: (1) why Counts One and Three should not have been grouped together pursuant to § 3D1.1; (2) if Counts One and Three should have been grouped, whether Oklu was prejudiced by his counsel's failure to raise that argument; and (3) whether the Government would entertain an application from Oklu seeking to transfer any lawfully-owned firearms seized in connection with his arrest consistent with the Supreme Court's recent decision in Henderson v. United States, 135 S. Ct. 1780 (2015).

        The Clerk of Court is directed to terminate all pending motions.

Dated: April 7, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copy mailed by chambers to:*

Ali Oklu
65879-054
FPC Berkeley
1600 Industrial Road
Beaver, WV  25813
*Movant Pro Se*

*Copies to all counsel of record via ECF*